# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PREMIUM MORTGAGE CORP., on behalf of itself and all others similarly situated, | ) ) ) ) | |
| *Plaintiff*, | ) ) | Civil No. 07-CV-6439 |
| vs. | ) ) | |
| EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company, TRANS UNION LLC, a Delaware limited liability company, EXPERIAN INFORMATION SOLUTIONS INC., an Ohio corporation, and CREDIT PLUS, INC, a Maryland corporation, Individually and as a Representative of Similarly Situated Defendants. | ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND TRANS UNION LLC

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTS ....................................................................................................................... 2

  A. The Fair Credit Reporting Act and "Consumer Reports" ................................... 2

  B. The Sale of Consumer Reports under the FCRA ............................................... 3

  C. Reports of "Hard Inquiries" are Consumer Reports .......................................... 4

  D. "Prescreening" under the FCRA ...................................................................... 5

  E. "Mortgage Trigger" Products are Prescreened Consumer Reports
     Covered by the FCRA and Approved by the FTC ............................................. 6

  F. State Legislative Attempts to Prohibit Mortgage Trigger Products Have Been Held
     Preempted by the FCRA .................................................................................. 7

  G. Plaintiff's Complaint in This Case ................................................................... 8

ARGUMENT ............................................................................................................. 8

II. PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW
    UNDER THE FAIR CREDIT REPORTING ACT. ............................................. 9

  A. The Plain Language Of The FCRA Expressly ProhibitsState Statutory
     And Common Law Regulation Of So-Called "Trigger Leads." ........................ 10

     1. The FCRA Expressly Preempts Any State-Law Requirement Or Prohibition Of
        Mortgage Trigger Products ...................................................................... 10

     2. The Preemption Provision At Issue Applies Equally To Both Common-Law
        Actions And Statutory Rules. ................................................................... 11

  B. The Preemption Provisions Of The FCRA Require Dismissal
     Of All Claims Against The CRA Defendants. .................................................. 12

III. THE COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE
    GRANTED BECAUSE EACH OF PLAINTIFF'S CLAIMS SUFFERS FROM FATAL
    DEFICIENCIES. ............................................................................................ 14

  A. Plaintiff's Claim For Misappropriation Of Trade Secrets (Count Three) Fails
     Because The Information At Issue Is Not Secret And In Any Event
     The CRAs Have Not Made Improper Use Of The Alleged "Secrets" ............... 14

     1. Plaintiff Has Failed To Identify Or Plead A "Trade Secret" ..................... 15

     2. The CRAs Are Not Using Plaintiff's Alleged Trade Secret In Breach
        Of An Agreement, Confidence Or Duty, Or As A Result Of Discovery
        By Improper Means .................................................................................. 17

  B. Plaintiff's Fraudulent Inducement Claim (Count Four) Fails To Plead With The
     Necessary Particularity Any Of The Required Elements Of A Claim Based In Fraud .... 18

  C. Plaintiff's Unfair Competition Claim (Count Five) Must Be Dismissed
     Because The Complaint Fails To Identify Any Confidential Information Belonging
     To Plaintiff And Cannot Allege Any Such Information Was Obtained Wrongfully ....... 22

  D. Plaintiff's Tortious Interference Claim (Count Six) Fails
     To Make Allegations Against Any Individual CRA,
     And Fails To Allege The Required Malice Or Wrongful Means ...................... 23

  E. Plaintiff's Claim That It Was A Third Party Beneficiary Of Unidentified Contracts
     (Count Seven) Fails To State A Claim .............................................................. 25

  F. Plaintiff's Unjust Enrichment Claim (Count Eight), Which Is Premised
     On The CRAs' Alleged Misappropriation Of Proprietary Information,

Fails Because The Information At Issue Was Not Proprietary
And Because There Was No Direct Relationship Between Plaintiff And The CRAs...... 27

G. Plaintiff's Count Seeking An Injunction (Count Nine) Must Be Dismissed
Because None Of Plaintiff's Substantive Claims Is Cognizable ...................................... 27

CONCLUSION.......................................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*A&A Jewellers Ltd. v. Bogarz, Inc.*, No. 05-CV-0020E(Sc),
   2005 WL 2175164 (W.D.N.Y. Sept. 7, 2005) ...................................................25

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..............................9

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, National Association*, 731 F.2d 112
   (2d Cir. 1984)......................................................................................................20

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir.  1995) ..........................................................21

*Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056 (C.D. Cal. 1998),
   *rev'd in part and aff'd in part on other grounds sub nom.*,
   *Andrews v. TRW, Inc.*, 289 F.3d 600 (9th Cir. 2002)...........................................4

*Banque Arabe Et Internationale D'Investissement v. Maryland National Bank*,
   57 F.3d 146 (2d Cir. 1995)...................................................................................19

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) ...............................................................11

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .........................................................8, 9

*CJS*, 2007 WL 2743396 (W.D.N.Y. Sept. 14, 2007)....................................................................8

*Chiarella v. United States*, 445 U.S. 222 (1980) ........................................................................20

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ....................................................11, 12, 13

*Conley v. Gibson*, 355 U.S. 41 (1957) ...........................................................................................8

*Consolidated Edison, Inc. v. Northeast Utilities*, 426 F.3d 524 (2d Cir. 2005)...........................26

*Consumer Data Indus. Ass'n v. Swanson,* No. 07-cv-3376(PJS/JJG),
   2007 WL 2219389 (D. Minn. July 30, 2007) ........................................................7, 10, 11

*Consumer Data Indus. Ass'n v. Swanson*, No. 07-cv-3376 (PJS/JJG)
   (D. Minn. Aug. 21, 2007) ......................................................................................7

*Defiance Button Machine Co. v. C & C Metal Products Corp.*,
   759 F.2d 1053 (2d Cir. 1985)................................................................................15

*Dow Jones & Co. v. International Sec. Exch., Inc.*, 451 F.3d 295 (2d Cir. 2006).......................23

*Gilliam v. Farr*, No. 06-CV-6351, 2007 WL 2743396 (W.D.N.Y. Sept. 14, 2007) .................8, 9

*Harris v. Key Bank N.A.*, 89 F. Supp. 2d 408 (W.D.N.Y. 2000) .............................................19, 20

*Hudson Hotels Corp. v. Choice Hotels International*, 995 F.2d 1173 (2d Cir. 1993)..................15

*Invamed, Inc. v. Barr Laboratories*, 22 F. Supp. 2d 210 (S.D.N.Y. 1998) ..................................21

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)........................................................................8, 9, 17

*Jet Star Enterprises v. Soros*, No. 05 Civ. 6585,
   2006 U.S. Dist. LEXIS 54955 (S.D.N.Y. Aug. 9, 2006) ....................................................27

*Jung v. Association of America Medical Colleges*, 300 F. Supp. 2d 119 (D.D.C. 2004) .............21

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) ............................................................15

*Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608 (N.D. Ill. 2007) ...............................................12

*Leo Spear Construction Co. v. Fidelity & Casualty Co.*, 446 F.2d 439 (2d Cir. 1971) ...............25

*Lerner v. Fleet Bank, National Association*, 459 F.3d 273 (2d Cir. 2006)............................19, 22

*Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000) ................................24

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
   85 F. Supp. 2d 282 (S.D.N.Y. 2000).....................................................................................19

*Olin Corp. v. E.I. Dupont de Nemours & Co.*, No. 05-CV-100S,
   2007 U.S. Dist. LEXIS 12644 (W.D.N.Y. 2007) ...............................................................26

*Oursler v. Women's Interart Center, Inc.*, 170 A.D.2d 407,
   566 N.Y.S.2d 295 (1st Dept. 1991) .....................................................................................26

*Reading International, Inc. v. Oaktree Capital Management LLC*,
   317 F. Supp. 2d 301 (S.D.N.Y. 2003)............................................................................24, 27

*Riegel v. Medtronic, Inc.*, 451 F.3d 104 (2d Cir. 2006).............................................................12

*Ruffin-Thompkins v. Experian*, 422 F.3d 603 (7th Cir. 2005) ..................................................4, 16

*Schuld v. R.J. Reynolds Tobacco Co.*, No. 99-cv-6552T,
   2000 U.S. Dist. LEXIS 13384 (W.D.N.Y. Aug. 30, 2000) ...............................................14

*Silver v. Kuehbeck*, 217 Fed. Appx. 18 (2d Cir. 2007)...............................................................24

*Softel, Inc. v. Dragon Medical & Scientific Commc'ns, Inc.*, 118 F.3d 955 (2d Cir. 1997) ..........15

*Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429 (S.D.N.Y. 2006).................................................19

*Telecom International America, Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001)...............22, 23

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................................21

*Yang v. GEICO*, 146 F.3d 1320 (11th Cir. 1998) ..........................................................3, 4, 5, 6, 16

## STATUTES

15 U.S.C. § 1681a(d) ........................................................................................................................2

15 U.S.C. § 1681b(a) ........................................................................................................................3

15 U.S.C. § 1681b(c) ..........................................................................................................5, 6, 10, 12

15 U.S.C. § 1681b(e) ..............................................................................................................5, 6

15 U.S.C. § 1681b(f) .........................................................................................................................4

15 U.S.C. § 1681e(a) ........................................................................................................................4

15 U.S.C. § 1681g(a) .............................................................................................................4, 16, 18

15 U.S.C. § 1681s(a)........................................................................................................................2, 3

15 U.S.C. § 1681t(b) .............................................................................................2, 9, 10, 12, 13

2007 Minn. Sess. Law. Serv. Ch. 105 (West)..................................................................................7

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq* ............................................................ *passim*

FEDERAL RULE OF CIVIL PROCEDURE 9(b)................................................................18, 19, 20, 22

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)  ........................................................................8

## MISCELLANEOUS

Connecticut General Assembly, Office of Legislative Research, Report No. 2007-R-
0072, *Mortgage Trigger Leads*, January 24, 2007,
http://www.cga.ct.gov/2007/rpt/2007-R-0072.htm......................................................7, 11

Federal Trade Commission Commentary to the Fair Credit Reporting Act,
16 C.F.R. Pt. 600, Appx. Section 603............................................................................3, 5

RESTATEMENT OF TORTS § 757 cmt. b (1939) ..............................................................................15

RESTATEMENT (SECOND) OF TORTS §§ 551, 766B (1977) ......................................................20, 24

State of Maine, Office of Consumer Credit Regulation, *Legislative Proposals to Address Predatory Lending Practices in Maine*, December 8, 2006, www.maine.gov/tools/whatsnew/attach.php?id=26818&an=1 ....................................7, 11

**INTRODUCTION**

Defendants Experian Information Solutions, Inc., Equifax Information Services LLC and Trans Union, LLC (collectively, the "CRAs") are the three national credit reporting agencies, and are primarily in the business of collecting and selling credit-related information on consumers, subject to the requirements of the Fair Credit Reporting Act ("FCRA").  One type of information that CRAs are required to collect with respect to each consumer is a record of "inquiries"—*i.e.*, of requests for a credit report on the consumer.  Information on such inquiries is routinely included in various types of credit reports, and a report of such inquiries is itself a "consumer report" within the definition of the FCRA.  One type of report containing inquiry information—which the Federal Trade Commission has expressly affirmed to be permissible under the FCRA—is a so-called "prescreening" report known as a "mortgage trigger" report, which informs potential lenders when a consumer who meets the lender's eligibility criteria has been the subject of a mortgage-related inquiry.

Plaintiff Premium Mortgage Corporation, a broker of residential mortgage loans, claims that the CRAs' sale of mortgage trigger reports concerning its potential customers violates its rights under New York law.  In particular, Plaintiff alleges an assortment of claims premised on the common theory that its purchase of a credit report on a potential customer is a "trade secret" that the CRA that sold the report is forbidden to reveal—despite Plaintiff's failure to obtain any agreement not to disclose the purchase, and despite the FCRA's authorization to the CRAs to sell such information.

Defendants respectfully submit that Plaintiff's claims are completely without merit, both because they are expressly preempted under the FCRA, and because they fail to state a claim under New York law.  In particular, the FCRA broadly preempts any state law action "relating to

1

the prescreening of consumer reports," 15 U.S.C. § 1681t(b)(1)(A), and it is beyond dispute that the mortgage trigger reports at issue are "prescreened" reports under the FCRA.  For this reason, the only federal court to address the issue had no difficulty concluding that this provision barred all state-law regulation of mortgage triggers.  Accordingly, Plaintiff's claims must be dismissed as preempted.

In addition, Plaintiff's claims fail because they all depend on Plaintiff's novel attempt to characterize its purchase of credit reports as proprietary and confidential trade secret information.  As demonstrated in detail below, this claim is simply unsustainable, and Plaintiff therefore cannot satisfy the elements of any of its purported causes of action.  For this reason, too, Plaintiff's claims against the CRAs must be dismissed in their entirety.

## FACTS

### A.      The Fair Credit Reporting Act and "Consumer Reports"

The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), regulates, in minute detail, the provision of credit reports, including the types of information that the CRAs can and must maintain regarding consumers; how long the information must be retained; the information that can be sold to credit grantors; and the circumstances under which the CRAs can sell information to credit grantors who wish to make unsolicited offers of credit to consumers. The Federal Trade Commission (the "FTC") enforces the FCRA.  *See* 15 U.S.C. § 1681s(a).

As defined by the FCRA, the term "consumer report" is very broad, and includes:

Any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes[].

2

*Id.* § 1681a(d)(1)(A).  Under this definition, "consumer report" encompasses what is typically referred to as a "credit report," *i.e.*, a detailed report that gives a listing of the history and status of each of the consumer's accounts, judgments, bankruptcies, etc.  "Consumer report" also includes any report that provides only limited information regarding a consumer, if it meets the definition above.  So, for example, the following reports, though limited in scope, are "consumer reports" under the FCRA:

- Reports reflecting the third parties that have obtained copies of a consumers credit report, whether the identities are disclosed by name or industry type.  *Yang v. GEICO*, 146 F.3d 1320, 1321 (11th Cir. 1998).[1]

- Reports about rental characteristics (such as a consumer's evictions, rental payment histories, treatment of premises).  FCRA Commentary, 16 C.F.R. Pt. 600, App. Section 603.

- Reports listing whether a consumer has ever issued a bad check.  *Id.*

- Reports reflecting public record information relating to records of arrest, or the institution or disposition of civil or criminal proceeding.  *Id.*

## B.    The Sale of Consumer Reports under the FCRA

The FCRA strictly limits the circumstances under which consumer reports can be sold. Consumer reports can only be sold to persons and entities having a statutory "permissible purpose" for purchasing such reports.  *See* 15 U.S.C. § 1681b(a), (b).  Credit grantors may purchase a consumer report if they "intend to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished . . . ."  15 U.S.C. § 1681b(a)(3)(A).  For example, a mortgage broker, such as Plaintiff, has a "permissible

---

[1]  In *Yang v. GEICO,* 146 F.3d 1320 (11th Cir. 1998), the plaintiff contended that Equifax's practice of selling "Inquiry Activity Reports," which contained a consumer's "name, recent addresses, social security number, date of birth . . . recent employers [and] a partially-encoded list of all the entities that have inquired about the . . . [consumer's] credit history for the previous two years, such as lending institutions and collections agencies" constituted the sale of a "consumer report" or credit report under the FCRA.  *Id* at 1322.  The court agreed, holding that such information was, indeed, a "consumer report" and subject to regulation under the FCRA. *Id*. at 1325.

purpose" to purchase and view a client's consumer report when it does so in connection with underwriting that client's mortgage loan.

The FCRA also requires CRAs to maintain procedures to insure that only persons and entities with a permissible purpose obtain consumer reports.  One section requires that purchasers of consumer reports certify their permissible purpose to the CRAs.  *See* 15 U.S.C. § 1681b(f)(2).  The certification must include the user's purpose for purchasing the consumer report and a certification that the consumer report will be used for no other purpose.  *Id.* § 1681e(a).  Similar requirements are imposed when consumer reports are sold through a reseller, such as Defendant Credit Plus, Inc.  *Id.* § 1681e(e).

## C.     Reports of "Hard Inquiries" are Consumer Reports

When a credit grantor requests a copy of an individual's consumer report in response to a consumer's application for credit, the creditor is said to have made a "hard inquiry" into the consumer's credit file.  The FCRA requires that CRAs record all hard inquiries to consumers' credit files so that those inquiries can be disclosed in accordance with 15 U.S.C. § 1681g(a)(3).[2] Hard inquiries are regularly listed in consumer reports.[3] Plaintiff's own website notes that hard inquiries are considered relevant to a consumer's creditworthiness and are factored into consumer credit scores.  *See* Premium Mortgage Corporation, *What is a Credit Score*,

---

[2] Section 1681g(a)(3) provides that when a consumer requests a copy of his or her credit report, the CRA must disclose to the consumer, among other things, all persons that requested the consumer's credit report in the preceding year.

[3] *See, e.g., Ruffin-Thompkins v. Experian*, 422 F.3d 603, 609 n.2 (7th Cir. 2005) (Experian credit report lists "those companies that review a consumer's credit history as a result of the completion of a credit application, loan application, or something similar"); *Yang*, 146 F.3d at 1320-22 (noting that credit inquires are reflected in Equifax credit reports and "Inquiry Activity Reports" sold to Equifax subscribers); *Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056, 1075 n.18 (C.D. Cal. 1998) (explaining that credit reports list inquiries—"all the entities which have received a copy of the report . . . in the past"—and describing inquiry portion of Trans Union report), *rev'd in part and aff'd in part on other grounds sub nom.*, *Andrews v. TRW, Inc.*, 289 F.3d 600 (9th Cir. 2002).

http://www.premiummortgagenew.com/Whatisacreditscore (last visited Sept. 27, 2007) (various

factors, including "number of inquiries are all considered in credit scores. . . .  [F]ive percent [of

the credit score is based on] pursuit of new credit – credit scores requested."); *see generally*

Premium Mortgage Corporation, *The Loan Process*, http://www.premiummortgagenew.com/

TheLoanProcess (last visited Sept. 26, 2007).  The sale of such information is a "consumer

report" and thus permitted, but regulated by, the FCRA.  *See Yang*, 146 F.3d at 1321-22.

     **D.**       **"Prescreening" under the FCRA**

The FCRA authorizes CRAs to sell "prescreen" consumer reports in connection with

transactions that are not initiated by the consumer, subject to certain limitations.  15 U.S.C.

§ 1681b(c)(1).  The FTC defines "prescreening" as "the process whereby a [CRA] compiles or

edits a list of consumers who meet specific criteria and provides this list to the client or a third

party (such as a mailing service) on behalf of the client for use in soliciting these consumers for

the client's products or services."  Federal Trade Commission Commentary to the Fair Credit

Reporting Act, 16 C.F.R Part 600, § 604(3)(A), ¶ 6.  The classic example of prescreening is the

unsolicited, pre-approved credit card solicitation that consumers receive in the mail.  In that

situation, a credit card issuer will provide the CRAs with a list of criteria, *e.g.* all consumers in

certain zip codes who have more than three credit cards, having a combined balance of more

than $10,000 and credit a credit score greater than 700.  The credit card issuer must then make a

statutorily-prescribed "firm offer of credit" to all consumers who meet those criteria.  The FCRA

allows a consumer to elect not to have his or her credit file included in prescreens by notifying

the CRAs that he or she "does not consent to any use of . . . [his or her] consumer report . . . in

connection with any credit . . . transaction that is not initiated by the consumer."  15 U.S.C.

§ 1681b(e).  It also limits the information that CRAs may furnish in the context of prescreening

to (1) the consumer's name and address; (2) a non-unique identifier for the consumer, *e.g.* the CRAs cannot provide consumers' social security numbers; and (3) other information that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity.[4] *Id.* § 1681b(c)(2).

**E.    "Mortgage Trigger" Products are Prescreened Consumer Reports Covered by the FCRA and Approved by the FTC**

The "mortgage trigger" products that are the subject of the Complaint are a type of prescreened list of consumers, who meet specified credit criteria and who have recently had a hard inquiry posted to their credit files for purposes of a mortgage application.  (Amd. Compl. ¶ 1.)  Put differently, "mortgage triggers" are prescreened reports as to which one of the prescreening criteria is a recent mortgage-related inquiry with respect to the consumer.  This product is covered by the FCRA as a prescreened consumer report.  *See* 15 U.S.C. § 1681b(c)(1); *Yang*, 146 F.3d at 1321-22.  Purchasers of these "trigger leads" are thus obligated to follow all requirements regarding prescreen offers of credit, including making a statutorily-prescribed "firm offer of credit" to the consumers who meet the prescreen criteria.  15 U.S.C. § 1681b(c)(1); *see also* FTC Consumer Alert, *Shopping for a Mortgage?  Your Application May Trigger Competing Offers* (Feb. 2007), *available at* http:www.ftc.gov/bcp/edu/pubs/consumer/alerts/alt171.pdf (hereinafter "FTC Consumer Alert").

As explained above, the FCRA expressly authorizes the CRAs to furnish consumer reports in connection with such unsolicited offers of credit.  *See* 15 U.S.C. § 1681b(c).  The FTC, as the federal agency charged with enforcing the FCRA, has expressly recognized that trigger

---

[4]  Thus, the CRAs cannot tell the purchaser of the trigger lead that any particular mortgage broker has made a hard inquiry into a consumer's credit file.  This prevents a purchaser of prescreen reports from specifically targeting the customers of a particular competitor.

lead products are allowed under the FCRA and can benefit consumers.  Specifically, in its

February 2007 "Consumer Alert," the FTC states:

> Federal law allows this [trigger lead] practice if the offer of credit meets
> certain legal requirements.
>
> Clearly some mortgage companies benefit from the practice.  But the FTC
> says consumers can benefit, too:  prescreened offers can highlight other
> available products and make it easier to compare costs while you carefully
> check out the terms and conditions of any offers you might consider.

FTC Consumer Alert (Feb. 2007).

### F.     State Legislative Attempts to Prohibit Mortgage Trigger Products
###        Have Been Held Preempted by the FCRA

Earlier this year, the Minnesota legislature passed a law prohibiting the sale of mortgage

trigger leads.  *See* 2007 Minn. Sess. Law. Serv. Ch. 105 (West).  Before the Minnesota statute

could take effect, the United States District Court for the District of Minnesota held that it was

preempted by the FCRA's broad prohibition on any State law regulation of prescreening, and

issued a preliminary injunction against enforcement of the statute.  *See Consumer Data Indus.*

*Ass'n v. Swanson,* No. 07-cv-3376(PJS/JJG), 2007 WL 2219389 (D. Minn. July 30, 2007).  That

order has since been reduced to a consent judgment.  *Id.*; *see also Consumer Data Indus. Ass'n v.*

*Swanson,* No. 07-cv-3376(PJS/JJG) (D. Minn. Aug. 21, 2007) (final amended consent order

enjoining enforcement of Minnesota Statute prohibiting sale of mortgage trigger leads).  State

authorities have also recognized that regulation of mortgage trigger products is preempted.[5]

---

[5]   *See, e.g.,* Connecticut General Assembly, Office of Legislative Research, Report No.
2007-R-0072, *Mortgage Trigger Leads*, January 24, 2007, http://www.cga.ct.gov/2007/rpt/2007-
R-0072.htm (last visited Setpember 28, 2007) (discussing preemption of state law by FCRA
relating to prescreened trigger lead information from a consumer report); State of Maine, Office
of Consumer Credit Regulation, *Legislative Proposals to Address Predatory Lending Practices
in Maine*, December 8, 2006, at 2-4, 23,

### G.      Plaintiff's Complaint in This Case

On July 17, 2007, Plaintiff brought this putative class action against the CRAs and Credit

Plus, Inc., alleging a variety of state-law theories under which the CRAs' sale of mortgage

trigger lead products is claimed to be impermissible.  Plaintiff purports to represent a class of

> All mortgage brokers/bankers and mortgage brokerage firms, who,
> between January 1, 2003 and the present, purchased credit reports in
> furtherance of customers' mortgage applications from either Equifax,
> Experian or Trans Union, or alternatively, from a reseller that purchased
> credit reports through one or more of the aforementioned credit bureaus,
> and which thereafter had their customer information sold by the Bureaus
> and/or Resellers without their permission, to third-party competitors.

(Amd. Compl. ¶ 17.)  Excluded from the class are "persons and entities engaged in the mortgage

brokerage business who participated in or benefited from the Trigger Lead scheme described [in

the Complaint]."  (*Id.*)  Plaintiff asserts claims for breach of contract, breach of the implied

covenant of good faith and fair dealing, misappropriation of trade secrets, fraud, unfair

competition, tortious interference with contractual or prospective business relations, breach of

contract of which the class members were allegedly intended beneficiaries, and unjust

enrichment.  Plaintiff also seeks an injunction prohibiting the CRAs from selling mortgage

trigger leads.

### ARGUMENT

In the recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the

Supreme Court "clarified the standard to be applied to a 12(b)(6) motion."  *Gilliam v. Farr*, No.

06-CV-6351 CJS, 2007 WL 2743396, at *2 (W.D.N.Y. Sept. 14, 2007).  *Twombly* "explicitly

_____

(continued…)

www.maine.gov/tools/whatsnew/attach.php?id=26818&an=1 (last visited Setpember 28, 2007)
(discussing preemption of state law related to prescreened trigger leads by FCRA).

disavowed" the approach of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and established a

more robust approach to evaluating whether a complaint has stated a claim for relief.  *Iqbal v.*

*Hasty*, 490 F.3d 143, 155 (2d Cir. 2007).  Under the clarified Rule 12(b)(6) standard,

> a Plaintiff's obligation to provide the grounds of his entitlement to relief
> requires more than labels and conclusions, and a formulaic recitation of
> the elements of a cause of action will not do.  Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Gilliam*, 2007 WL 2743396, at *2 (internal quotations omitted); *see also, e.g.*, *ATSI*

*Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*)

(footnote omitted); *Iqbal*, 490 F.3d at 157-58 (*Twombly* "obliges a pleader to amplify a claim

with some factual allegations in those contexts where such amplification is needed to render the

claim *plausible*").  When applying this standard, "'[c]onclusory allegations of the legal status of

the defendants' acts need not be accepted as true for the purposes of ruling on a motion to

dismiss.'"  *Gilliam*, 2007 WL 2743396, at *2 (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d

1085, 1092 (2d Cir. 1995)).  Courts should not "assume that [a plaintiff] can prove facts that it

has not alleged or that the defendants have violated [relevant] laws in ways that have not been

alleged."  *Twombly*, 127 S. Ct. at 1969 n.8 (citation omitted).


**I.      PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW UNDER THE
          FAIR CREDIT REPORTING ACT.**

All of Plaintiff's claims against the CRAs are preempted by the broad preemption

provisions of the FCRA, which expressly forbid the imposition of any state-law "requirement or

prohibition" relating to "prescreening" or to the "information contained in consumer reports."  15

U.S.C. § 1681t(b)(1)(A), (E).  This language applies to both statutory and common law "requirement[s] or prohibition[s]," and it has specifically been held to forbid state-law regulation of mortgage trigger products.  Because all of Plaintiff's claims seek to impose state-law liability on the CRAs merely for selling mortgage trigger reports, those claims are preempted.

### A. The Plain Language Of The FCRA Expressly Prohibits State Statutory And Common Law Regulation Of So-Called "Trigger Leads."

### 1. The FCRA Expressly Preempts Any State-Law Requirement Or Prohibition Of Mortgage Trigger Products

As the only court to address the application of state law to mortgage triggers has held, under the "broad and explicit" preemptive reach of 15 U.S.C. § 1681t(b), "neither Minnesota nor any other state may prohibit or regulate the[] sale" of "mortgage-trigger lists."  *Swanson*, 2007 WL 2219389, at *4.  This result is dictated by the sweeping language of the statute, which states, in pertinent part, that "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports."  15 U.S.C. § 1681t(b)(1)(A).  Thus, on its face, the FCRA broadly prohibits State regulation of prescreening, as it bars interference with even "the subject matter" relating to the prescreening of consumer reports.

This broad preemption provision protects the uniformity of a federal scheme that specifically authorizes, and regulates, the practice of prescreening.  Under the FCRA, Congress expressly permits prescreening in connection with a "firm offer of credit," *see* 15 U.S.C. § 1681b(c), subject only to certain limitations on what information may be provided in a prescreened report and the right of consumers to "opt out" of the prescreening process.  *See id.* § 1681b(e).  The prescreening permitted by the FCRA includes prescreened reports that use recent mortgage inquiries as one of the prescreening criteria—*i.e.*, mortgage trigger reports—as

the FTC, the agency charged with enforcing the FCRA, has expressly recognized. *See* FTC

Consumer Alert (Feb. 2007).

Accordingly, there can be no doubt that mortgage trigger products, as a form of

prescreening, are protected against state regulation by the preemption provisions of the FCRA.

*See Swanson*, 2007 WL 2219389, at *4; *see also* Connecticut General Assembly, Office of

Legislative Research, Report No. 2007-R-0072, *Mortgage Trigger Leads*, *supra* n.5 (discussing

preemption of state law by FCRA relating to prescreened trigger lead information from a

consumer report); State of Maine, Office of Consumer Credit Regulation, *Legislative Proposals

to Address Predatory Lending Practices in Maine*, *supra* n.5 (discussing preemption of state law

related to prescreened trigger leads by FCRA).

### 2.  The Preemption Provision At Issue Applies Equally To Both Common-Law Actions And Statutory Rules.

The "No requirement or prohibition" language employed in the FCRA's broad

preemption provision applies to all state "requirement[s] and prohibition[s]," regardless of

whether they are imposed by statute, by regulation, or by the common law.  The Supreme Court

has held that "the term 'requirements' . . . reaches beyond positive enactments, such as statutes

and regulations, to embrace common-law duties."  *Bates v. Dow Agrosciences LLC*, 544 U.S.

431, 443 (2005) (interpreting the Federal Insecticide, Fungicide, and Rodenticide Act's

preemption provision).  Indeed, in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), the

Supreme Court interpreted a preemption clause that commanded that a State make "[n]o

requirement or prohibition" as applying to both common-law and statutory claims.  *Id.* at 515.  In

so holding, the Court noted that "[t]he phrase 'no requirement or prohibition' sweeps broadly

and suggests no distinction between positive enactments and common law . . . ."  *Id.* at 521; *see

also id.* at 547 (Scalia, J., concurring) (advocating an even broader interpretation of "no

requirement or prohibition" language than adopted by the plurality).  Since then, "the Supreme Court has held firm to the view that state 'requirements' can be created by state common law actions."  *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 121 (2d Cir. 2006).

Here, just as in *Cipollone*, the phrase "no requirement or prohibition" is a broad one that "suggests no distinction between positive enactments and common law," and thus preempts both sets of claims equally.  *Cipollone*, 505 U.S. at 521.  Accordingly, the one decision that has addressed the application of 15 U.S.C. § 1681t(b)(1)(A) to common-law claims applied the provision without hesitation, dismissing both statutory and common-law claims as expressly preempted.  *See Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 613-14 (N.D. Ill. 2007) (dismissing claims for common-law invasion of privacy as well as under the Illinois Consumer Fraud Act premised upon the CRAs' allegedly improper prescreening activity).  In short, the FCRA preempts *all* state-law requirements or prohibitions relating to prescreening, whether derived from a statute or from purported common-law duties.

    **B.**    **The Preemption Provisions Of The FCRA Require Dismissal Of All Claims Against The CRAs.**

Given the foregoing, each of the substantive counts of the Complaint is preempted by the FCRA, and must be dismissed.  This Court must examine each common law claim individually to determine whether the claim is preempted.  *Cipollone*, 505 U.S. at 523.  The "central inquiry" is "whether the legal duty that is the predicate of the common-law damages action," *id.* at 524, (1) constitutes a "requirement or prohibition" (2) "with respect to any subject matter regulated under [§ 1681b(c) or (e)] . . . relating to the prescreening of consumer reports," 15 U.S.C. § 1681t(b)(1)(A).

Here, all of Plaintiff's claims against the CRAs are preempted, because each of those claims purports to impose a duty to keep consumers' mortgage inquiries confidential by

refraining from providing prescreened mortgage trigger reports.  Such a duty would clearly be a

"requirement" or "prohibition" relating to the "subject matter" of prescreened reports, and claims

based on it are therefore expressly preempted by § 1681t(b)(1)(A).  In addition, such a duty

would purport to affect the *content* of credit reports, by excluding a particular type of relevant

information—mortgage inquiries—from such reports.  Accordingly, it also falls squarely within

the scope of § 1681t(b)(1)(E), which expressly preempts state law with respect to the subject

matter regulated under the FCRA provisions governing the "information contained in consumer

reports."

To be sure, Plaintiff's claims might not be preempted if the purported duty not to disclose

mortgage inquiries was not "imposed under the laws of any State," 15 U.S.C. § 1681t(b), but

rather was imposed by express contractual promises by the CRAs not to disclose such inquiries.

*Cf. Cipollone*, 505 U.S. at 525-26.  Here, however, none of Plaintiff's claims falls within this

possible exception, because none alleges that there was any such contract between Plaintiff and

any of the CRAs.  Rather, all of the claims rely on a purported duty imposed or implied by state

law.

For example, Plaintiff's misappropriation of trade secrets claim (Count Three) is

expressly premised on a purported "duty and obligation" that is not alleged to arise from

particular agreements or representations of the CRAs—but instead presumably arises from state

law—to maintain mortgage inquiries as confidential information.  (Amd. Compl. ¶ 46.)

Similarly, Plaintiff's fraud claim (Count Four) does not identify any misrepresentation on the

part of any CRA in any dealing with Plaintiff, but rather is based on a purported "obligat[ion]"

implied by state law to disclose the fact that mortgage inquiries would be reported (*id.* ¶ 59), and

a corresponding purported state-law duty *not* to report mortgage inquiries in the absence of such

13

a disclosure.  (*Id.* ¶¶ 53-58.)  Likewise, the Complaint's unfair competition claim (Count Five)

presupposes a duty arising under state law independently of any contract that would "require and

obligate the Defendants to hold" the relevant information confidential (*id.* ¶ 64); the tortious

interference claim (Count Six) is premised on the same purported theory of state-law obligation

(*id.* ¶ 70); the contractual third-party beneficiary claim (Count Seven), which identifies no

contractual provision, is apparently premised on a duty implied by law, when no actual contract

to that effect exists, to refrain from reporting Plaintiff's mortgage inquiries (*id.* ¶ 81); and the

unjust enrichment claim (Count Eight) is necessarily based on the conclusion that CRAs'

revenues were "unjust" because of "the Defendants' conduct as described above" (*id.* ¶ 85)—*i.e.*,

the CRAs' violation of the purported duty to keep mortgage inquiries confidential.

Because the purported state-law duty that is the basis of all of Plaintiff's substantive

claims against the CRAs is preempted, Counts Three through Eight of the Complaint must be

dismissed.  *See, e.g., Schuld v. R.J. Reynolds Tobacco Co.*, No. 99-cv-6552T, 2000 U.S. Dist.

Lexis 13384, at *5 (W.D.N.Y. Aug. 30, 2000) (dismissing common-law claims as preempted).

Moreover, with those claims dismissed, there is no basis for Count Nine, which seeks an

injunction on the basis of the alleged violation of the substantive counts of the Complaint.

Accordingly, that count, too, must be dismissed.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED BECAUSE EACH OF PLAINTIFF'S CLAIMS SUFFERS FROM FATAL DEFICIENCIES.

### A.   Plaintiff's Claim For Misappropriation Of Trade Secrets (Count Three) Fails Because The Information At Issue Is Not Secret And In Any Event The CRAs Have Not Made Improper Use Of The Alleged "Secrets"

In Count Three of its Amended Complaint, Plaintiff asserts a claim against the CRAs for

the misappropriation of trade secrets.  The Complaint does not expressly identify any purported

trade secret, but it seems clear that what Plaintiff terms a "secret" is the identity of its potential

14

customer and the fact that Plaintiff obtained a credit report on that customer in connection with an application for a mortgage loan.  (Amd. Compl. ¶ 1.)

To state a claim for misappropriation of trade secrets under New York law, Plaintiff must establish "(i) that it possesse[s] a trade secret and (ii) that the defendant used that trade secret in breach of an agreement, a confidential relationship, or duty, or as a result of discovery by improper means."  *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 (2d Cir. 1993).  Plaintiff's claim fails under both prongs of this test:  the purchase of a consumer report from a CRA is in no way a proprietary "secret" of the purchaser, and in any event Plaintiff identifies no breach of any agreement, confidence or duty, and cannot allege discovery by improper means.

### 1.     Plaintiff Has Failed To Identify Or Plead A "Trade Secret"

New York law defines a trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting RESTATEMENT OF TORTS § 757 cmt. b, at 5 (1939)).  Most fundamentally, it is essential that a trade secret, in fact, be a secret.  Thus, for example, "[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . .  only as long as [the owner] maintains the list in secrecy; upon disclosure, even if inadvertent or accidental, the information ceases to be a trade secret and will no longer be protected."  *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir. 1985) (citing, *inter alia*, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475-76 (1974); RESTATEMENT OF TORTS, § 757, cmt. b, at 6 (1939) ("[A]

15

substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information.").

Here, Plaintiff's purported secret—the fact that a consumer's credit report was purchased from a CRA in connection with a mortgage application—is nothing more than the CRAs *own* information that Plaintiff's reseller has ordered the credit report from the CRA to resell to the Plaintiff (a "hard inquiry" under the FCRA).  As described earlier, the FCRA requires CRAs to maintain a record of hard inquiries, 15 U.S.C. § 1681g(a)(3); treats reports of hard inquiries as "consumer reports," *see Yang*, 146 F.3d at 1321-22; and permits such consumer reports to be furnished by CRAs in the prescreening process, subject only to the specific conditions specified in the FCRA.  Under these circumstances, Plaintiff cannot claim that the information that such an inquiry was made about a consumer—information Plaintiff has voluntarily provided to the CRA by choosing to purchase the consumer's report from the CRA—is its own proprietary "secret," any more than any other purchaser of goods or services can claim that it exclusively "owns" the "secret" that the goods or services were purchased.  Indeed, such a claim is particularly inappropriate here, because it is settled that the FCRA permits the public sale of such inquiry information by the CRAs.

Moreover, in addition to the FCRAs' legal right to sell such "hard inquiry" information, it is universally recognized that reports of inquiries are a staple of standard credit reports and credit scores.  This is clear from judicial decisions, *see, e.g.*, *Ruffin-Thompkins v. Experian*, 422 F.3d 603, 609 n.2 (7th Cir. 2005); from the CRAs' own websites; from numerous authoritative government websites for consumers, *see, e.g.*, http://www.banking.state.ny.us/brcrcs.htm ("A credit report . . . consists of the following information: . . . inquiries on the account for the last two years . . . ."); http://www.ftc.gov/opa/2004/11/041130freecreditrpts.shtm ("A credit report

contains . . . a list of inquiries made by various financial institutions; . . . . Consumer reporting companies collect and sell this information to lenders and other businesses . . . ."); and from Plaintiff's own website, *see* http://www.premiummortgagenew.com/Whatisacreditscore.  As Plaintiff alleges that it is a regular purchaser of credit reports and credit scores (Amd. Compl. ¶¶ 25-26), it can hardly claim to be unaware of this wide dissemination of inquiries.  At a minimum, the Complaint fails to plead sufficient facts to make "plausible" any claim that by providing its customer information to a reseller for the specific purpose of conveying it to CRAs that openly trade in such information, Plaintiff treated the information as a secret, *see Iqbal*, 490 F.3d at 157-58.

> ### 2.     The CRAs Are Not Using Plaintiff's Alleged Trade Secret In Breach Of An Agreement, Confidence Or Duty, Or As A Result Of Discovery By Improper Means

Even if Plaintiff had a trade secret, it could not establish that any of the CRAs is using that trade secret in breach of an agreement, confidence or duty or as a result of discovery by improper means.  Plaintiff has not alleged that it has a contract with any CRA or that the CRAs breached any such contract, and Plaintiff—which, as explained above, voluntarily provided the information at issue to the CRAs—cannot contend that the CRAs acquired the information by improper means.  Moreover, Plaintiff's claim against each CRA is independent of Plaintiff's claims against the others, so that Plaintiff must distinctly plead that there was a breach by each CRA; but Plaintiff has not pleaded that even one of the CRAs had duty of secrecy and then violated it by actually selling information about even one of Plaintiff's customers.

Thus, Plaintiff is left to contend vaguely that the CRAs have used the alleged trade secret in violation of an unspecified "duty and obligation to maintain the confidentiality of the Class members' proprietary information."  (Amd. Compl. ¶ 46.)  However, Plaintiff makes no

allegation as to the source of this alleged duty, nor of any particular violation.  The CRAs have no freestanding, generic legal obligation to maintain creditor inquiries in confidence, and they do not stand in a fiduciary relationship with Plaintiff, who is an arms-length customer of a reseller, who is an arms-length customer of the CRAs.

Indeed, even aside from Plaintiff's inability to identify any legal basis for such a duty, such a duty could not possibly exist in the context of a potential creditor's purchase of a consumer's credit report in connection with a mortgage application.  The FCRA requires that the CRAs post such a hard inquiry to the consumer's credit file.  *See* 15 U.S.C. § 1681g(a)(3).  The FCRA permits the sale of this very information in the form of a prescreen.  *See id.* § 1681b(a)(3).  And, the FTC has confirmed that the sale of mortgage trigger leads is permitted by federal law.  FTC Consumer Alert, (Feb. 2007).  Against this backdrop, the CRAs cannot have a duty to maintain any confidentiality regarding Plaintiff's request for a consumer's credit file in connection with a mortgage application.

In short, Plaintiff fails to state a claim for misappropriation of trade secrets and Count Three of its Complaint must be dismissed.

> **B.    Plaintiff's Fraudulent Inducement Claim (Count Four) Fails To Plead With The Necessary Particularity Any Of The Required Elements Of A Claim Based In Fraud**

Count Four of the Complaint (¶¶ 52-61), which purports to state a claim for "fraudulent concealment"—on the ground that the CRAs allegedly "omitt[ed] and conceal[ed] the fact that they would sell the Class members' proprietary information to third-party competitors" (*id.* ¶ 53)—is simply inadequate to state a claim under the rigorous pleading requirements of Federal Rule of Civil Procedure 9(b).  Rule 9(b), which applies to "all averments of fraud," requires that

"the circumstances constituting fraud . . . shall be stated with particularity."  The Complaint in this case, however, does not even make a gesture in the direction of particularity.

To comply with Rule 9(b), a complaint must, at a minimum, particularize "(1) the specific statement or omission; (2) the aspect of the statement or omission that makes it false or misleading; (3) when the statement was made; (4) where the statement was made; and (5) which defendant was responsible for the statement or omission."  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293-94 (S.D.N.Y. 2000) (internal quotation marks omitted); *see also Lerner v. Fleet Bank, Nat'l Ass'n*, 459 F.3d 273, 290 (2d Cir. 2006).  Moreover, "[w]hen fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth *separately* the acts or omissions complained of by *each* defendant."  *Odyssey Re*, 85 F. Supp. 2d at 293 (emphasis added).  Finally, "[i]n instances where the alleged fraud is premised on an omission, a plaintiff must specify the person responsible for the failure to speak, the context of the omission, and the manner in which the omission misled the plaintiff."  *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 449-50 (S.D.N.Y. 2006).

Here, the Complaint does not allege any of the elements of a fraudulent concealment claim with particularity.  To state a fraudulent inducement claim, Plaintiff must plead (1) that the defendant misrepresented or concealed a material fact, (2) knowingly or recklessly intending to induce Plaintiff's reliance, (3) that Plaintiff justifiably or reasonably relied on the misrepresentation or omission, and (4) that Plaintiff suffered damages as a result.  *See, e.g.*, *Lerner*, 459 F.3d at 291-92; *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995).  Because the fraud alleged here is based on alleged concealment, Plaintiff must additionally plead a basis on which the defendant had a duty to disclose.  *See, e.g.*, *Harris v. Key Bank N.A.*, 89 F. Supp. 2d 408, 417 (W.D.N.Y. 2000);

19

RESTATEMENT (SECOND) OF TORTS § 551 (1977).  The Complaint fails to satisfy these standards in multiple ways.

First, the Complaint entirely fails to distinguish among the three CRAs, alleging generically that "Defendants" were guilty of fraudulent concealment without specifying any facts or circumstances particular to any of the individual CRAs.  Plaintiff fails to identify any representation by any of the CRAs; any particular transaction with any of the CRAs; the context of any alleged omission; or, indeed, any fact at all that is not generically and vaguely alleged against all three CRAs as a group.  Such "group pleading" is patently inadequate under Rule 9(b).

Second, the Complaint does not allege any transaction or communication at all between Plaintiff and any CRAs from which material information was allegedly omitted when it should have been stated.

Third, under New York law, Plaintiff's fraudulent concealment claim requires establishing a duty to disclose what was allegedly concealed.  See, e.g., Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n, 731 F.2d 112, 122-23 (2d Cir. 1984); see generally Chiarella v. United States, 445 U.S. 222, 235 (1980) ("[W]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.").  In the business context, this requires establishing either "a fiduciary relationship," or that "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  Aaron Ferer & Sons , 731 F.2d at 122-23 (emphasis added); see also Harris, 89 F. Supp. 2d at 417; RESTATEMENT (SECOND) OF TORTS § 551 (explaining when duty to disclose arises).  The Complaint, however, does not allege any of this, with "particularity" or otherwise.  It does not allege that there was ever any transaction between Plaintiff and any CRA,

much less any facts establishing either a fiduciary relationship or a transaction in which a

particular CRA was aware that it had superior information that was not readily available to

Plaintiff and that Plaintiff was acting on the basis of mistaken knowledge.  Indeed, the closest the

Complaint comes to alleging a basis for a "duty to disclose" is the conclusory assertion that

"Defendants were obligated by morals and good conscience" to disclose (Compl. ¶ 59)—an

assertion that fails to identify *any* legal basis for a duty to disclose, let alone a sufficiently

particularized basis.

*Fourth*, the Complaint alleges generically that Class members "justifiably relied on the

Defendants' representations" (¶ 58), but does not identify with "particularity" any

"representation" relied on by *Plaintiff* (as opposed to other class members whose rights Plaintiff

has no standing to assert[6])—let alone any such representation by any particular CRA.  Nor is

there any allegation, let alone a particularized allegation, that Plaintiff (as opposed to

unidentified class members) of the nature of the reliance or any damage resulting from reliance.

*Fifth*, the Complaint does not allege any intent on the part of any individual CRA to

perpetrate a fraud on Plaintiff—much less does it plead, as required, actual "facts that give rise to

a strong inference of fraudulent intent."  *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.

---

[6] *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("the plaintiff generally must assert his *own* legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties" (emphasis added)); *Invamed, Inc. v. Barr Lab.*, 22 F. Supp. 2d 210, 221 (S.D.N.Y. 1998) (allegations insufficient to state a claim where "[t]he complaint . . . presents no facts that might establish any participation by the [Defendant] . . . save including [it] within the term 'defendants.'"); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) ("plaintiffs' use of the term 'defendants' to refer to multiple defendants . . . is insufficient either by itself or in combination with [other] allegations . . . to demonstrate a basis for [a specific defendant's participation . . . .  Plaintiffs cannot escape their burden of alleging that each defendant participated . . . .").

1995).[7]  The only allegation that comes close is that "defendant Resellers knew that the

disclosure of such information would reduce or negate the possibility of the Class members

executing contracts with them" (Amd. Compl. ¶ 57)—but this allegation is about *Resellers*, not

any of the CRAs.

In sum, Count Four of the Complaint falls short in almost every imaginable way of the

particularity required by Rule 9(b).

> ### C.  Plaintiff's Unfair Competition Claim (Count Five) Must Be Dismissed Because The Complaint Fails To Identify Any Confidential Information Belonging To Plaintiff And Cannot Allege Any Such Information Was Obtained Wrongfully

Count Five of the Complaint (¶¶ 62-67), under the rubric of "unfairly competitive

conduct" (*id.* ¶66), alleges that "Defendants' conduct in misappropriating the Class members'

confidential information directly contravenes accepted commercial practices that would

otherwise require and obligate the Defendants to hold the Class members' customer information

confidential" (*id*. ¶ 64).  This allegation fails to state a claim because Plaintiff fails to identify

any proprietary confidential information and likewise fails to adequately allege that the

information at issue was obtained wrongfully.

To state a claim for unfair competition against a defendant, a plaintiff must allege that the

defendant "misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to

plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or

confidential relationship."  *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir.

2001).  Where "the conduct attributed to the defendants in the complaints does not constitute a

---

[7]  While "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," FED. R. CIV. P. 9(b), the Second Circuit has emphasized that courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."  *Lerner*, 459 F.3d at 291 (internal quotation marks omitted).

wrongful use or misappropriation under New York law of a[] property interest of the plaintiff[]," then, "[a]s a matter of law . . . plaintiff[] cannot prevail on these claims." *Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 302 (2d Cir. 2006).

Here, the Complaint fails to satisfy the requirement that it plead that any of the CRAs "obtain[ed] access to [P]laintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l.,* 280 F.3d at 197. As detailed earlier, a CRA's knowledge that it has received, from a reseller, an order for a credit report on Consumer X, which the reseller will resell to Broker/Banker Y, is knowledge that the credit bureau possesses lawfully. Absent a contract limiting its rights, or other identifiable legal constraint, a CRA is free to utilize that information, which is information about its own business transactions, for its own purposes. No limiting contract between any reseller and Equifax, or Experian, or Trans Union, nor any other legal constraint on use of this information by the CRAs, is identified in the Complaint. Nor does the Complaint allege that Plaintiff has established any fiduciary or confidential relationship with *any* of the CRAs, pertaining to orders from resellers for credit reports, much less that any such relationship has suffered an "abuse." On the contrary, it was widely and readily known that the information at issue is a legitimate matter for a credit bureau to include in credit reports. *See supra*, at 5-7, 16-17.

Accordingly, Plaintiff's unfair competition claim must be dismissed.

### D.     Plaintiff's Tortious Interference Claim (Count Six) Fails To Make Allegations Against Any Individual CRA, And Fails To Allege The Required Malice Or Wrongful Means

Count Six of the Complaint (¶¶ 68-76), sounding in tortious interference, alleges that "Class members" obtained credit reports "with the intention of using same to execute mortgage contracts with prospective customers" and that the CRAs "interfered" with this "by intentionally

selling those very customers' confidential information to third party competitors with knowledge those third parties would utilize this information to usurp those customers" (*id.* ¶ 74).  This allegation—which amounts to nothing more than a complaint that Plaintiff would prefer not to have to compete with other creditors who might offer consumers alternative mortgage terms— fails to state a claim for tortious interference.

The elements of a claim for tortious interference with prospective business relations are: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship."  *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000) (citation omitted); *see generally* RESTATEMENT (SECOND) OF TORTS § 766B ("One who *intentionally* and *improperly* interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation.") (emphasis added).  Plaintiff cannot satisfy these elements.

As an initial matter, Plaintiff's generic allegations regarding "Class members" fail to plead tortious conduct by any particular CRA; fail to identify any customer purportedly lost as a result of such conduct by that CRA; and fail even to plead that Plaintiff, as opposed to other class members, lost customers.[8]

Even more fundamentally, Plaintiff is unable to satisfy the requirement that any CRA has acted for the *purpose* of interfering with Plaintiff's prospective business transaction with a mortgage prospect or otherwise wrongfully or maliciously.  *See, e.g.*, *Silver v. Kuehbeck*, 217

---

[8]  Plaintiff may not be required "to identify with . . . specificity the prospective contractual relationships in question."  *Reading Int'l*, 317 F. Supp. 2d at 335.  But this does not relieve Plaintiff of an obligation to allege at least that *it* lost an actual prospective customer as a proximate result of the conduct of *each* defendant.

Fed. Appx. 18, 21 (2d Cir. 2007) ("The Complaint failed to allege that defendant interfered with plaintiff's business relationship solely to harm him or that he used wrongful means in doing so."); *Leo Spear Constr. Co. v. Fidelity & Cas. Co.*, 446 F.2d 439, 445 (2d Cir. 1971) (no liability absent showing defendant acted with "purpose of preventing [plaintiff] from dealing with third parties").  Plaintiff's own allegation is that the CRAs acted for their own commercial purpose—the profitable sale of their own information about a credit inquiry made to them— which, under settled law, does not constitute malice or a purpose to harm Plaintiff.  *See, e.g., Leo Spear*, 446 F.2d at 445 (defendant's actions to advance own "legitimate interests" do not establish "purpose of injuring [plaintiff's] relations with third parties."); *A&A Jewellers Ltd. v. Bogarz, Inc.*, No. 05-CV-0020E(Sc), 2005 WL 2175164, at *2 (W.D.N.Y. Sept. 7, 2005) ("Actions taken, at least in part, to promote or advance [defendant's] economic self-interest are, by definition, not taken for the sole purpose of harming [plaintiff].").  And any claim that the CRAs used improper means necessarily fails:  as established earlier, the CRAs are authorized under the FCRA to sell mortgage trigger information, and there was nothing wrongful about their doing so.

### E.   Plaintiff's Claim That It Was A Third Party Beneficiary Of Unidentified Contracts (Count Seven) Fails To State A Claim

Count Seven of the Complaint (¶¶ 77-83), which alleges a violation of unspecified terms of unspecified contracts between the CRAs and unidentified Resellers—of which contracts Plaintiff claims "Class members" were third-party beneficiaries—falls far short of stating a cognizable claim.

Under New York law, a plaintiff may only recover as a third-party beneficiary if it appears (1) "that no one other than the third party can recover if the promisor breaches the contract," or (2) "that the language of the contract otherwise clearly evidences an intent to permit

enforcement by the third party." *Oursler v. Women's Interart Center, Inc.*, 170 A.D.2d 407, 408, 566 N.Y.S.2d 295, 296-97 (1st Dept. 1991) (internal quotation marks omitted).  "An intended third party beneficiary to a contract means what it says—that the contract was intended for the benefit of a third party." *Olin Corp. v. E.I. Dupont de Nemours & Co.*, No. 05-CV-100S, 2007 U.S. Dist. LEXIS 12644, at *10 (W.D.N.Y. 2007) (internal quotation marks omitted).  "Absent the showing of such an intent on the face of the agreement, the third party is merely an incidental beneficiary with no right to enforce the contract." *Id.* at 11 (internal quotation marks omitted); *see also, e.g.*, *Consol. Edison, Inc. v. Northeast Utils.*, 426 F.3d 524, 528 (2d Cir. 2005) ("To create a third party right to enforce a contract, the language of the contract must clearly evidence an intent to permit enforcement by the third party.") (internal quotations marks omitted).

Here, Plaintiff fails even to identify a single specific contract, let alone to allege any of the facts necessary to establish that it was the intended beneficiary of any such contract.  Because Plaintiff does not allege—and could have no basis for alleging—"that no one other than [it] can recover if the promisor breaches" these unidentified contracts, or "that the language of the contract otherwise clearly evidences an intent to permit enforcement by [it]," there is no basis for its claim to be a third-party beneficiary, *see Oursler*, 170 A.D.2d at 408.  This alone is fatal to its claim.

In addition, even if Plaintiff had alleged facts adequate to show it to be an intended beneficiary of a contract by any of the CRAs, Plaintiff fails to allege any cognizable *breach* of such contract by that CRA.  The Complaint does not contain even a conclusory allegation that any CRA's contract with any reseller contained a provision prohibiting the CRA from selling credit inquiry information, let alone any specific allegation identifying any such contract or contract provision.

26

In short, Plaintiff's claim that it may recover for alleged breaches of unspecified provisions of unspecified contracts between the individual CRAs and unspecified third parties must be dismissed.

### F.   Plaintiff's Unjust Enrichment Claim (Count Eight), Which Is Premised On The CRAs' Alleged Misappropriation Of Proprietary Information, Fails Because The Information At Issue Was Not Proprietary And Because There Was No Direct Relationship Between Plaintiff And The CRAs

Count Eight of the Complaint (¶¶ 84-87) alleges that the CRAs "have been unjustly enriched by being permitted to wrongfully sell proprietary information belonging to the Class members" (*id.* ¶ 85).  As demonstrated earlier, however, the inquiry information sold by the CRAs was *not* proprietary to Plaintiff and was permissibly sold under the FCRA; accordingly this claim must be dismissed.

In addition, to state a proper unjust enrichment claim, "plaintiff must have had direct dealings or some sort of quasi-contractual relationship with each defendant." *Jet Star Enters. v. Soros*, No. 05 Civ. 6585, 2006 U.S. Dist. LEXIS 54955, at *18 (S.D.N.Y. Aug. 9, 2006).  This is because "[u]njust enrichment is a quasi-contractual remedy." *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 333 (S.D.N.Y. 2003).  Here, Plaintiff has alleged that it dealt with resellers rather than with any of the CRAs directly.  (Amd. Compl. ¶¶ 25, 35, 45.)  Thus, "Plaintiff[] [has] not alleged that [it] had a contractual or quasi-contractual relationship with defendants, and in fact ha[s] alleged no prior course of business dealings with defendants whatsoever." *Reading Int'l*, 317 F. Supp. 2d at 333-34.  Accordingly, "Plaintiffs' unjust enrichment claim must . . . fail." *Id.*

### G.   Plaintiff's Count Seeking An Injunction (Count Nine) Must Be Dismissed Because None Of Plaintiff's Substantive Claims Is Cognizable

Count Nine of the Complaint seeks an injunction against the CRAs' continued sale of mortgage trigger products.  (Amd. Compl. ¶¶ 88-93.)  Because this Count simply requests

injunctive relief on the basis of the claims asserted in prior counts—all of which must be

dismissed—this Count, too, should be dismissed.

## CONCLUSION

All Counts of the Complaint asserted against defendants Equifax Information Services,

LLC, Experian Information Solutions, Inc., and Trans Union, LLC should be dismissed.


Respectfully Submitted,

 /s/  Meir Feder
Meir Feder
Kate Bushman
JONES DAY
222 E. 41st St.
New York, NY

Eric J. Ward
WARD NORRIS HELLER & REIDY
300 State Street
Rochester, NY  14614

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*


Christopher R. Lipsett
David Sapir Lesser
WILMER CUTLER PICKERING HALE & DORR LLP
399 Park Avenue
New York, New York 10022

Carolyn G. Nussbaum
NIXON PEABODY LLP
Clinton Square
Post Office Box 31051
Rochester, New York  14603-1051

*Attorneys for Defendant Trans Union LLC*

Craig E. Bertschi
Cindy D. Hanson
Kali Wilson Beyah
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309

Edward P. Hourihan, Jr.
Laura W. Smalley
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, New York 14534

*Attorneys for Defendant Equifax Information
Services, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| PREMIUM MORTGAGE CORP., on behalf of itself and all others similarly situated, | ) ) ) ) | |
| *Plaintiff*, | ) ) | Civil No. 07-CV-6349 |
| vs. | ) ) | |
| EQUIFAX INFORMATION SERVICES, LLC, a Georgia limited liability company, TRANS UNION LLC, a Delaware limited liability company, EXPERIAN INFORMATION SOLUTIONS INC., an Ohio corporation, and CREDIT PLUS, INC, a Maryland corporation, Individually and as a Representative of Similarly Situated Defendants. | ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

---

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2007, I electronically filed the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND TRANS UNION LLC with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following

Louis B. Cristo – lcristo@trevettlaw.com

Craig E. Bertschi – cbertschi@kilpatrickstockton.com

Edward P. Hourihan, Jr. – ehourihan@harrisbeach.com

Laura W. Smalley – lsmalley@harrisbeach.com

William G. Bauer – wbauer@woodsoviatt.com

Cindy D. Hanson – chanson@kilpatrickstockton.com

Kali Wilson Beyah – kbeyah@kilpatrickstockton.com

Carolyn G. Nussbaum – cnussbaum@nixonpeabody.com

Christopher R. Lipsett – chris.lipsett@wilmerhale.com

David Sapir Lesser – david.lesser@wilmerhale.com

Dated: September 28, 2007
Rochester, New York

By: /s/ Meir Feder
    Meir Feder
    mfeder@jonesday.com
    Kate Bushman
    klbushman@jonesday.com
    JONES DAY
    222 E. 41st St.
    New York, NY

    Eric J. Ward
    ejw@wnhr.com
    Ward Norris Heller & Reidy LLP
    300 State Street
    Rochester, NY  14614

    *Attorneys for Experian Information Solutions, Inc.*